## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CATERPILLAR FINANCIAL                                   CIVIL ACTION
SERVICES CORPORATION

VERSUS                                                  No. 20-1521

IZTACCIHUATL 2501, its engines,                         SECTION I
boilers, tackle, apparel, etc., *in rem*

### ORDER & REASONS

Before the Court is plaintiff Caterpillar Financial Services Corporation's ("Caterpillar") motion for summary judgment[1] against the defendant *in rem*, the IZTACCIHUATL 2501, its engines, boilers, tackle, apparel, etc. ("Vessel"). Caterpillar asks the Court to declare that Caterpillar has a preferred ship mortgage on the Vessel, and, since the owner of the Vessel, Barcazas Y Remolques, S.A. de C.V. ("Owner"), defaulted under the mortgage, to grant summary judgment against the Vessel *in rem*. The Owner opposes the motion,[2] and Caterpillar has filed a memorandum in reply.[3] For the reasons below, the Court grants the motion.

## I.    BACKGROUND

This case arises from the Owner's alleged default on the loan used to purchase the Vessel. The Vessel is an unmanned, Mexican-flagged barge.[4] The Owner purchased the Vessel in 2013 using a loan from Caterpillar, which had a total

---

[1] R. Doc. No. 30.
[2] R. Doc. No. 36 (opposing summary judgment).
[3] R. Doc. No. 38 (reply in support of summary judgment).
[4] R. Doc. No. 30-11, at 2 ¶ 3.

principal of $2,745,000.[5]   The Owner initially made regular payments on the loan but fell behind in 2018.[6]   The following summarizes the parties' relevant contractual agreements, the Owner's alleged default, and the subsequent judicial proceedings.

### A.   The Parties' Agreements: Loan Agreement, Note, and Mortgage

Three agreements are relevant here: the Loan Agreement, Note, and Mortgage. The parties entered into the Loan Agreement in 2013, and the Owner delivered a Promissory Note ("Note") to Caterpillar.[7]   The Note required the Owner to repay the loan in 120 monthly installments of principal and interest.[8]   The Loan Agreement provided additional terms, consistent with those contained in the Note, governing the Owner's repayment obligations.[9]   The Mortgage secured Caterpillar's interest in the Vessel—empowering Caterpillar to foreclose in the event of the Owner's default.[10]

It is undisputed that the Owner duly executed and delivered to Caterpillar the Mortgage on the Vessel, which secured the total sum of the loan, $2,745,000.[11] However, the parties disagree about the validity of the Mortgage under Mexican law. Caterpillar offers evidence that the Mortgage was duly executed and recorded under Mexican law with official documentation from the Mexican registrar.[12]   The Owner

---

[5] R. Doc. No. 36, at 1.
[6] R. Doc. No. 30-1, at 3; R. Doc. No. 36, at 1.
[7] R. Doc. No. 30-11, at 1 ¶ 2; R. Doc. No. 36-3, at 2 ¶ 2.
[8] R. Doc. No. 30-3, at 1 (promissory note dated May 2, 2013); R. Doc. No. 36, at 1.
[9] R. Doc. No. 30-4, at 9–25.
[10] R. Doc. No. 30-6, at 8.
[11] R. Doc. No. 30-11, at 2 ¶ 3; R. Doc. No. 36-3, at 2 ¶ 3.
[12] R. Doc. No. 30-11, at 2 ¶¶ 5–6; R. Doc. No. 30-7, at 3 (Mortgage) (bearing registrar's seal, which is entitled "Marina Mercante Registro Publico Maritimo Nacional"); R. Doc. No. 30-10, at 2 ¶ 5 (declaration of Daniel Hernandez, a licensed attorney in the

argues that the Mortgage is invalid.[13]  However, it neither offers evidence of this nor explains the supposed invalidity; its sole argument is that the declaration from Caterpillar's Mexican attorney, combined with a scan of the Mortgage (which bears the seal of the Mexican registrar), is insufficient to demonstrate the absence of a material factual dispute.[14]

The Mortgage provides that a default under either the Loan Agreement or Note is considered a default under the Mortgage.[15]  Consequently, a default under the Note—which requires the Owner to make 120 monthly installments of principal and interest[16]—would be considered an "Event of Default" under the Mortgage and entitle Caterpillar to enforce the Mortgage by foreclosing on its interest.[17]

---

United Mexican States).  The Owner also admitted in its Answer that it conveyed the Mortgage to Caterpillar to secure the Loan.  R. Doc. No. 14, at 2 ¶ 8.

[13] *See* R. Doc. No. 36, at 5–6 (arguing that Caterpillar's declaration from its Mexican attorney is insufficient to show no genuine issue of material fact exists as to the Mortgage's validity under Mexican law).

[14] *Id.*  The same is true of Caterpillar's allegation that the Mortgage secures "all sums Owner is obligated to pay Caterpillar under the Note and Loan Agreement"— Caterpillar offers evidence, and the Owner does not.  *Compare* R. Doc. No. 30-11, ¶ 4 (Caterpillar's Statement of Uncontested Material Facts), R. Doc. No. 30-2, ¶ 9 (Declaration of Caterpillar's Special Accounts Manager) (claiming Mortgage's validity), *and* R. Doc. No. 30-10, ¶ 5 (Declaration of Caterpillar's Mexican attorney) (same), *with* R. Doc. No. 36-3, ¶ 4 (Owner's Opposition and Responses to Caterpillar's Statement of Uncontested Material Facts) (denying that the Mortgage secures 100% of the Owner's Loan obligations "to the extent [Caterpillar's statement summarizing evidence to the contrary] contains legal conclusions on contract interpretation").

[15] R. Doc. No. 30-6, at 8 (providing that Caterpillar, as mortgagee, "may enforce the mortgage herein incorporated at any time, whenever . . . [Owner] breaches any obligation assumed under the credit agreement called 'LOAN AGREEMENT' or under [the] document called 'PROMISSORY NOTE' . . . .").

[16] *See* R. Doc. No. 30-3, at 1.

[17] R. Doc. No. 30-6, at 8.

B.   The Owner's Default and Alleged Amendment

The Owner concedes that it "fell behind on payments in 2018."[18]  The payment history provided by Caterpillar shows that the Owner made the following payments between 2018 and May 2020 (when this suit began): three payments in March 2020 (one payment of $38,408.68 and two payments of $1,183.19); one payment in September 2019 ($33,416.87); two payments in May 2019 ($66,583.13 and $100,000.00); one payment in January 2019 ($48,810.52); one payment in November 2018 ($8,313.88); and one payment in February 2018 ($64,050.00).[19]  The Owner offers no contrary evidence disputing the authenticity or accuracy of Caterpillar's corporate accounting records.

Caterpillar argues that the Owner breached the Note and Loan Agreement by remaining "in arrears on its payment obligations from February 2018 through today."[20]  The Owner, according to its opposition to summary judgment, apparently does not dispute this.[21]

C.   Subsequent Proceedings

Caterpillar sued the Vessel *in rem*, applied for a warrant to arrest the Vessel, and received a warrant in May 2020.[22]  The Vessel was arrested on June 22, 2020.[23]

---

[18] R. Doc. No. 36, at 1.
[19] R. Doc. No. 30-8, at 2–6.  Caterpillar's Special Accounts Manager also declared that the Owner is in arrears on its payment obligations from February 2018 through October 2020.  R. Doc. No. 30-2, at 3 ¶ 15.
[20] R. Doc. No. 30-1, at 7.
[21] R. Doc. No. 36, at 1 (stating that the Owner "fell behind on payments in 2018").
[22] R. Doc. Nos. 1, 3, 7.
[23] R. Doc. No. 11.

It has remained in custody since then; no parties other than the Owner have appeared to assert a lien or security interest in the Vessel.

On December 16, 2020, the Court held a telephonic pretrial conference with counsel for the Owner and Caterpillar participating. There, the parties agreed that the following facts are undisputed: (1) the principal owed to Caterpillar is $1,578,493.37; (2) the total interest due under the Note, as of the January 19, 2021 trial date, would be $92,460.10 (calculated using a *per diem* rate of $263.08); (3) the interest due under the Amended Note, if it were executed, is greater than the interest due under the first Note; (4) the total late charges due are $2,366.38; and (5) the total custodial fees due are $66,814.01.[24]   Caterpillar has also informed the Court that, despite the language of its Complaint, it is no longer seeking attorneys' fees.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). "[A] party seeking summary judgment

---

[24] R. Doc. No. 44, at 1–2. The Court, in calculating the interest and custodial fees in the final judgment amount below, used the *per diem* rates of $263.08 and $100.00, respectively. Using this method, the Court has determined that the total interest and custodial fees accrued as of December 31, 2020 is $87,461.58 and $64,914.01, respectively. *See* R. Doc. No. 30-9, at 1–5 (invoices for custodial fees between June 2020 and October 2020) (charging a monthly "[d]ockage and custodial storage" fee of $3,000); *id.* at 1 (charging an initial towing fee of $35,850.00); *id.* at 2, 3, 6–7 (charging additional miscellaneous fees relating to holding the Vessel in custody). The Owner does not provide any evidence contradicting the accuracy of these invoices, nor does the Owner argue that the amounts charged are unreasonable.

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore*

6

*Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### III.   LAW AND ANALYSIS

In its motion for summary judgment, Caterpillar requests that the Court (1) declare the Mortgage "to be a valid preferred ship mortgage lien upon the Vessel, its engines, tackle, apparel, etc., and all other equipment and necessaries belonging and appurtenant thereto," and (2) issue judgment, due to the Owner's default on the Mortgage, "against the Vessel, *in rem*, in the full amount owed by Owner under the Promissory Note, the Loan Agreement, and the Mortgage, plus all accrued interest, charges, [and] costs."[25]  The Court addresses each in turn.

#### A.   Preferred Ship Mortgage Lien under CIMLA

Caterpillar moves for summary judgment to have its Mortgage on the Vessel declared a valid preferred ship mortgage lien. The relevant statute is the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. §§ 31301–43.

A preferred ship mortgage creates a maritime lien against the mortgaged vessel, which is enforceable in admiralty. 1 Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 9:5 (6th ed. 2020). "A preferred mortgage is a lien on the mortgaged

---

[25] R. Doc. No. 30, at 2.

vessel in the amount of the outstanding mortgage indebtedness secured by the vessel." 46 U.S.C. § 31325(a).  CIMLA provides for two types of preferred mortgages. *See* 46 U.S.C. § 31301(6)(A)–(B).[26]  Where a foreign-flagged vessel is at issue—as here—CIMLA provides that the mortgage is "preferred"

> if the mortgage . . . was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and has been registered under those laws in a public register at the port of registry of the vessel or at a central office.

46 U.S.C. § 31301(6)(B); *see also* 1 Schoenbaum, *supra*, § 9:5 (describing preferred mortgages).  Under CIMLA, then, a mortgage on a foreign vessel is preferred so long as it was properly (1) executed and (2) recorded under the laws of the nation in which the foreign vessel is registered.  *Governor & Co. of the Bank of Scotland v. Maria S.J.*, No. 98-1187, 1999 WL 130632, at *2 (E.D. La. Mar. 10, 1999) (Fallon, J.).

To determine whether a mortgage is valid under foreign law, per Fed. R. Civ. Proc. 44.1, the Court may consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 833 n.12 (5th Cir. 1993) (quoting Fed. R. Civ. Proc. 44.1).  Courts frequently accept affidavits from foreign-law experts to guide their analyses of foreign law.  *See, e.g.*, *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 546–47 (5th Cir. 2012) (considering affidavits from

---

[26] The Court notes that a different set of requirements apply to American-flagged vessels.  *See* 46 U.S.C. § 31322(a)(1)–(3).  The requirements for foreign vessels, in contrast, are comparatively less stringent.  *Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co.*, No. 97-3828, 1998 WL 419507, at *3 (E.D. La. July 20, 1998) (Duval, J.) ("The stringent procedural requirements for perfecting domestic ship mortgages are not imposed on foreign ship mortgages.").

experts on Iraqi law); *Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 682 (E.D. La. 2012) (Milazzo, J.) (considering affidavit of expert on English law).

If the mortgage is preferred, CIMLA provides the mortgagee a cause of action to enforce the lien in a federal court: upon "default of any term of the preferred mortgage, the mortgagee may . . . enforce the preferred mortgage lien in a civil action in rem for a . . . a foreign vessel." 46 U.S.C. § 31325(b)(1). Further, the mortgagee may bring either a civil action or an admiralty action *in personam* against the mortgagor or guarantors to recover a deficiency. 1 Schoenbaum, *supra*, § 9:5 (citing 46 U.S.C. § 31325(b)(2)).

B.   There is no Genuine Issue of Material Fact that Caterpillar has a Preferred Ship Mortgage

Since the Mortgage here is over a Mexican vessel, to be considered "preferred," it must have been properly (1) executed and (2) recorded under the laws of Mexico. 46 U.S.C. § 31301(6)(B); *Maria S.J.*, 1999 WL 130632, at *2. Caterpillar has provided evidence that the Mortgage was (1) duly executed and (2) recorded with the Marina Mercante's Registro Publico Nacional Maritimo—the official vessel documentation registrar in Mexico.[27] Caterpillar also included a declaration from its Mexican attorney, who attested that the Mortgage was properly executed and recorded under

---

[27] R. Doc. No. 30-7, at 3 (Mortgage bearing registrar's seal, which is entitled "Marina Mercante Registro Publico Maritimo Nacional"); R. Doc. No. 30-10, at 2 ¶¶ 5, 9 (Declaration of Daniel Hernandez) (stating the Mortgage was duly executed and delivered to Caterpillar and identifying the official registrar). The Owner also admitted in its Answer that it conveyed the Mortgage to Caterpillar to secure the Loan. R. Doc. No. 14, at 2 ¶ 8.

Mexican law.[28]  Further, Caterpillar noted that the Owner "admitt[ed] in its Answer that it provided the Mortgage on the Vessel to Caterpillar to secure the Loan."[29]  The Owner also admitted that the Mortgage was recorded with the relevant registry.[30]

In light of that showing, the Court finds that Caterpillar, as the summary judgment movant, has met its initial burden to demonstrate that no genuine issue of material fact exists as to whether its Mortgage is a preferred ship mortgage.  *See* Fed. R. Civ. Proc. 56(a).  The Owner argues that this cannot be so because Caterpillar has provided only (1) a scan of the recorded Mortgage, bearing the Mexican registrar's seal and (2) a declaration from a Mexican attorney stating that the Mortgage is valid under Mexican law.  According to the Owner, that is not enough to shift the burden to the non-movant (here, the Owner) to show that a genuine issue of material fact exists.[31]  The Owner is wrong.[32]  The "party moving for summary judgment must

---

[28] R. Doc. No. 30-10, at 2–3 ¶¶ 5, 9, 12 (explaining the Owner executed the Mortgage, the Mortgage was recorded, and "[a]ll of the acts and things required to be done under the laws of Mexico in order to give the Preferred Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Caterpillar.").

[29] R. Doc. No. 38, at 4 (citing R. Doc. No. 14, at 2 ¶ 8 (Answer) ("[The Owner] admits that the Ship Mortgage was executed for the barge in the amount of $2,745,000 . . . .")).

[30] R. Doc. No. 14, at 2 ¶ 9 (Answer) ("[The Owner] admits that the Ship Mortgage was recorded with the National Maritime Public Registry in August 2013.").

[31] R. Doc. No. 36, at 6.

[32] The Owner's argument also proves too much.  Fed. R. Civ. Proc. 44.1 specifically provides that the Court "may consider any relevant material or source" to determine a foreign law issue.  The purpose of Rule 44.1 is to provide flexible means for resolving such issues.  *See id.* cmt. (noting "the rule provides flexible procedures for presenting and utilizing material on issues of foreign law"); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3d ed. 2020 update) (noting that, after the adoption of Rule 44.1, "the trial court's freedom of inquiry no longer is encumbered by any restraint on its research or by the rules of admissibility").  If declarations attesting to a foreign law issue were insufficient, that would undermine

10

'demonstrate an absence of a genuine issue of material fact,' but [it] need not *negate* the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 323) (emphasis retained). Caterpillar has demonstrated the absence of a genuine issue of material fact as to the Mortgage's validity under Mexican law.

The question, then, is whether the Owner has responded with *evidence*—rather than "conclusory allegations"—showing that a genuine issue of material fact requires a trial. *Fontenot*, 780 F.2d at 1195. The Owner's burden is not carried simply by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (citations omitted).

The Court's decision on this point is easy because the Owner has failed to produce *any* evidence showing that the status of the lien in Mexico could be in dispute. The Owner offers no evidence questioning the authenticity of the Mortgage exhibit provided by Caterpillar. The Owner provides no affidavits or declarations calling into question the substance of Caterpillar's declarations. The Owner does not even identify the provisions of Mexican law that could render the Mortgage invalid. Because the Owner "has not suggested" how Caterpillar's interpretation of Mexican law "might be inaccurate," the Court finds its arguments unpersuasive. *McGee*, 671 F.3d at 547 (5th Cir. 2012).

---

the purpose of Rule 44.1—judicial efficiency. *See McGee*, 671 F.3d at 546 (accepting affidavits as proof of foreign law).

11

The only affirmative argument the Owner makes regarding the Mortgage's (in)validity is a technical one—that Caterpillar failed to provide the notice required by Fed. R. Civ. Proc. 44.1.[33]  That argument falls flat: The Advisory Committee Notes to Rule 44.1 require only that notice be "written" and "reasonable."  Fed. R. Civ. Proc. 44.1, cmt.  And our circuit's precedent is clear: "When the applicability of foreign law is not obvious, notice is sufficient if it allows the opposing party time to research the foreign rules."  *Northrop Grumman Ship Sys., Inc. v. Republic of Venezuela*, 575 F.3d 491, 497 (5th Cir. 2009).  The applicability of foreign law to this case—a case involving a Mexican Vessel and a Mortgage recorded in Mexico—is obvious and has been since the Complaint was filed.  And even if it was not, Caterpillar's notice was sufficient to give the Owner time to research the foreign rules.  Caterpillar provided notice of a potential foreign-law issue several times over in its Complaint—nearly five months before filing its motion for summary judgment.[34]  And attached to Caterpillar's motion for summary judgment was a declaration from its Mexican attorney, who

---

[33] R. Doc. No. 36, at 5–6.  Rule 44.1 provides, in full:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. Proc. 44.1.

[34] In its Complaint, Caterpillar (1) alleged the Vessel was an unmanned Mexican-flagged barge, R. Doc. No. 1, at 1–2 ¶ 2, (2) attached the Mexican mortgage (in its original language—Spanish), R. Doc. No. 1-3, (3) alleged the Mortgage was recorded with the official vessel documentation registrar of Mexico, R. Doc. No. 1, at 4 ¶ 9, and (4) averred that Caterpillar had done "all of the acts and things required to be done under the laws of Mexico" to give the Mortgage preferred status, *id.* at 4 ¶ 11.

attested to the Mortgage's validity under Mexican law.[35]   The Court finds that the Owner has failed to show that there remains a genuine issue of material fact as to the Mortgage's status as a preferred ship mortgage.

C.   There is No Genuine Issue of Material Fact Regarding the Owner's Default or the Amounts Due on the Loan

The next question is whether Caterpillar may enforce the Mortgage *in rem* against the Vessel.   CIMLA provides for such an action upon "default of any term of the preferred mortgage."   46 U.S.C. § 31325(b).   Therefore, the question is whether the Owner has defaulted on the Mortgage.   The Mortgage provides that a default occurs "[a]t the time [the Owner] breaches any obligation assumed under the credit agreement called 'Loan Agreement' or under [the] document called 'Promissory Note.'"[36]   That is, the Mortgage is breached whenever the Loan Agreement or the Note is breached.

Caterpillar argues the Owner defaulted because it has been in arrears on its repayment obligations since 2018—and thereby breached the terms of the Note, which required 120 monthly payments of principal and interest.[37]   In support, Caterpillar offers copies of the Owner's payment history for the life of the Loan.   That

---

[35] R. Doc. No. 30-10.

[36] R. Doc. No. 30-6, at 8 (Mortgage).

[37] R. Doc. No. 30-3, at 1.   The Note provided that "Borrower will make equal payments of principal in an amount sufficient to fully amortize this Note through payments on the scheduled due dates over a term ending on the Maturity Date."   *Id.*   The "Maturity Date," in turn, is defined as "the day immediately following the lapse of a term of 120 months commencing one month prior to" the date on which interest is first due.   *Id.*

payment history, as described above,[38] and the declaration of Caterpillar's Special Accounts Manager, confirms Caterpillar's allegations.[39]   These facts are sufficient to satisfy Caterpillar's initial burden to demonstrate that no genuine dispute of material fact exists as to default.   That shifts the burden to the Owner to show that a genuine issue of material fact exists.

The Owner does not dispute that it has failed to fulfill its payment obligations under the original Loan Agreement and Note.[40]   However, the Owner argues there is a genuine issue of material fact regarding "the amount of payments and amounts owed."[41]   The Owner provides no evidence to put that amount in dispute, and the parties have already stipulated that the outstanding principal owed to Caterpillar is $1,578,493.37.[42]   The Owner's only argument is that the parties amended the Loan Agreement and Note.[43]   From this the Court infers—because there would be no other reason to argue it—that the Owner somehow believes (but for some reason does not concretely allege) that the Amendment changed its repayment obligations in a way that renders it not in default.

---

[38] *See supra* note 19 and accompanying text.

[39] *See* R. Doc. No. 30-2, at 3–4 ¶ 15.

[40] R. Doc. No. 36, at 1 (acknowledging it "fell behind on payments in 2018").

[41] R. Doc. No. 36, at 7.   The Court notes, however (as it has above), that the Owner offers no concrete evidence of this alleged dispute (*e.g.*, affidavits, declarations, or divergent payment histories).

[42] R. Doc. No. 44, at 1.

[43] R. Doc. No. 36, at 7.   The parties agree that they *attempted* to amend the original Loan Agreement and Note in late 2019.   *See* R. Doc. No. 30-1, at 4 (acknowledging negotiations to enter into the Amendment); R. Doc. No. 38, at 2 (same); R. Doc. No. 36, at 1 (same).   However, the Owner alleges that the parties *entered into* an Amended Loan Agreement and Amended Note.   R. Doc. No. 36, at 7.

The Owner's attempt to defeat summary judgment fails because the Owner does not show—or even concretely allege—that the terms of the alleged Amendment make a difference for determining whether the Owner defaulted.  That is, the Owner has failed to show that the Amendment, assuming it were executed and controlling, puts a *material* fact in dispute.  The Owner does not offer any evidence showing that it has not defaulted on the amended agreement.[44]  And it would be difficult for the Owner to even argue as much: under the Amended Note's payment schedule, the Owner was required to pay monthly installments of principal and interest, starting on November 1, 2019.[45]  According to the payment history, the Owner made a payment in March 2020 (more than three months late) in the amount due for November and December 2019.[46]  The Owner, however, made no other payments between November 2019 and May 2020.[47]  Therefore, even under the Amended Note, the Owner has defaulted.  The Owner offers no evidence putting that in dispute, and its pleadings in this regard are telling.

The Owner stops short of alleging, for example, that its amended repayment terms render it not in default.  The most the Owner argues is that Caterpillar's "pleadings are entirely silent as to the additional terms [in the alleged Amendment], note, payments, and agreements on the loan."[48]  Fair enough.[49]  But the Owner offers

---

[44] *See* R. Doc. No. 36, at 7.

[45] R. Doc. No. 36-2, at 13.

[46] R. Doc. No. 30-8, at 2.

[47] *Id.*

[48] R. Doc. No. 36, at 7.

[49] The Court notes, however, that Caterpillar has acknowledged from the beginning that the parties at least negotiated the alleged Amendment.  R. Doc. No. 30-1, at 4.

no argument—much less evidence—that the Amendment, assuming it was executed,[50] has not been defaulted.  Because of this failure, the Court cannot conclude that the Owner has offered evidence of a genuinely disputed issue of *material* fact.

The Court finds that there is no genuine dispute as to any material fact regarding the Owner's default.[51]  Accordingly, Caterpillar is entitled to foreclose on its preferred ship mortgage due to the Owner's default, and the Court grants Caterpillar's motion for summary judgment.[52]

## IV.   CONCLUSION

Accordingly,

---

That acknowledgment included the conditions on which Caterpillar's assent to the Amendment was premised.  *Id.*

[50] And this is a big assumption.  As supposed proof of the parties' Amendment, the Owner attached to its memorandum opposing summary judgment what it represented to this Court was the "fully executed First Amendment to [the] Loan Agreement."  R. Doc. No. 36, at 7.  That document, however, is not so 'fully executed'—the space reserved for the signature of Caterpillar's representative is blank.  R. Doc. No. 36-1, at 16.   Caterpillar explains that the parties *negotiated* a proposed Amendment, but Caterpillar's assent to the Amendment was "contingent upon Owner making additional payments to Caterpillar, including the overdue amounts owed on the Loan and payment of a modification fee."  R. Doc. No. 38, at 2.  When the Owner failed to perform those conditions, Caterpillar "did not execute the Amendment."  R. Doc. No. 38, at 2.  Given that the Owner does not allege that the Amendment's terms are material, the Court need not determine whether the Amendment was fully executed.

[51] And, as the parties stipulated on the telephonic pretrial conference, the amount owed is undisputed.  R. Doc. No. 44, at 1–2.

[52] The Owner also argues that summary judgment is "premature as necessary discovery has not been completed."  R. Doc. No. 36, at 3.  The Owner offers no explanation for its failure to complete discovery by the Court's deadline.  It argues simply that because discovery has not been completed (regardless of fault or diligence), summary judgment is improper.  *Id.* at 3–5.  Because the Owner fails to demonstrate how further discovery would enable it to respond, and the reasons why this discovery has not been accomplished already, the Court finds that the Owner's argument lacks merit.  *Krim v. BancTexas Grp.*, 989 F.2d 1435, 1441 (5th Cir. 1993).

**IT IS ORDERED** that Caterpillar's motion for summary judgment, declaring that it has a valid preferred ship mortgage on the defendant *in rem*, the IZTACCIHUATL 2501, its engines, boilers, tackle, apparel, etc. ("Vessel"), under which Mortgage the Owner has defaulted, is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment be entered against the Vessel, *in rem*, in the full amount owed by the owner of the Vessel, Barcazas Y Remolques, S.A. de C.V. ("Owner"), under the Promissory Note, Loan Agreement, and Mortgage, including all principal, late charges, interest, and custodial fees that have or will accrue as of the date on which the Vessel is sold.  As stated above, the outstanding principal due is $1,578,493.37.  The late charges due are $2,366.38.  The interest and custodial fees accrued as of December 31, 2020 are $87,461.58 and $64,914.01, respectively.  As of December 31, 2020, the full amount owed by the Owner is $1,735,135.34.  The additional interest and custodial fees that accrue from this date until the date on which the Vessel is sold shall be calculated using *per diem* rates of $263.08 and $100.00, respectively.

New Orleans, Louisiana, December 31, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**